IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore

Civil Action No. 23-cv-01001-RM

VIVOS THERAPEUTICS INC.,

 Plaintiff,

v.

STRAIGHTSMILE SOLUTIONS, LLC, and
KATHRYN AMANDA WILSON,

 Defendants.

_____

**AMENDED TEMPORARY RESTRAINING ORDER**
_____

  This matter is before the Court on Plaintiff Vivos Therapeutics Inc.'s ("Vivos") Motion for Temporary Restraining Order, with supporting documentation (collectively, the "Motion") (ECF No. 2), seeking an *ex parte* restraining order against Defendants StraightSmile Solutions, LLC and Kathryn Amanda Wilson (together "StraightSmile").  After being fully advised, the Motion is **GRANTED** as stated herein, for the reasons stated herein.

 **I.** **BACKGROUND**

  The following is gleaned from the Complaint (ECF No.1) and Motion.  Vivos manufactures an oral appliance which is prescribed by dentists and medical professionals for use in the treatment of mild to moderate sleep apnea.  The appliance is non-fixed and it is used to expand the oral cavity.  Vivos emphasizes that their device has been approved by the FDA.

In late March, 2023, the FDA issued a Safety Communication entitled "Evaluation of Safety Concerns with Certain Dental Devices Used on Adults."[1] The Communication listed a number of *fixed* oral appliances, none of which included any Vivos appliance. It also included "any other similar device types" in its warning, and stated that the safety of using of *those* devices to expand or remodel jaws in adults had not been established, nor were the devices cleared for use by the FDA. It also listed a number of complications that can arise from the use of "a fixed palatal expansion device" in adults.

In April, 2023, StraightSmile made a number of posts to various social media platforms identifying Vivos appliances, as well as several others, and stating that "the ADA and FDA have issued consumers a new hotline to report providers using these products in adults." (ECF No. 2-3, pp. 5-9; *see also* Appendix A, infra.) The postings also suggested that providers who used such devices in adults were risking their licenses. (Id.)

On April 17, 2023, attorneys for Vivos sent a letter to StraightSmile noting that the FDA Communication did not mention or implicate Vivos or its appliances and asking that the postings be removed. (ECF No. 2-3, pp. 2-4.) Vivos demanded that StraightSmile remove all such postings and that it also issue a corrective statement indicating that the prior communications had mischaracterized the Vivos devices. (Id., p.3.) StraightSmile responded by stating that it would take down the posts but also that it disagreed with Vivos' position and that it intended to post a copy of the cease and desist letter to all of its social media.

When StraightSmile had not removed the offending posts by April 18, 2023, Vivos filed this suit and Motion. In its suit, Vivos alleges libel per se and intentional interference with contract/business relations. (ECF No. 1.) Vivos argues that StraightSmile's statements threaten

---

[1] Vivos did not include a copy of the FDA Communication with its Complaint or its Motion. The Court located a copy of the Communication at https://www.fda.gov/medical-devices/safety-communications/evaluation-safety-concerns-certain-dental-devices-used-adults-fda-safety-communication (last accessed April 24, 2023).

2

to damage its reputation, noting that the posts suggested that the use of Vivos' products would place practitioners' licenses in jeopardy.  Vivos also argues that it is entitled to a temporary restraining order.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 65(b)(1), "the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."  In addition, Local Rule 65.1 also requires a certificate of counsel or an unrepresented party which addresses providing notice, and the provision of copies of filings, to opposing counsel and any unrepresented adverse party.  D.C.COLO.LCivR 65.1.

Case law also sets forth certain requirements which must be met before injunctive relief may be had.  Specifically, in order to obtain relief, the plaintiff must establish: "'(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest.'"  *Diné Citizens Against Ruining our Environment v. Jewell,* 839 F.3d 1276, 1281 (10th Cir. 2016) (quoting *Davis v. Mineta*, 302 F.3d 1104, 1111 (10th Cir. 2002)); *Watts v. Karmichael Family, LLC*, No. 07-cv-00638-MSK-MJW, 2007 WL 1059051, at *1 (D. Colo. Apr. 4, 2007) (unpublished) (motion for temporary restraining order is examined under same standards applicable to requests for preliminary injunction).  The Tenth Circuit no longer applies a

"modified test"[2] for determining temporary or preliminary injunctive relief, finding it inconsistent with the Supreme Court's decision in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008). *Diné Citizens*, 839 F.3d at 1282 (deciding preliminary injunction). "Because a preliminary injunction is an extraordinary remedy, the movant's right to relief must be clear and unequivocal." *Diné Citizens*, 839 F.3d at 1281 (citation and quotation marks omitted).

In addition, as to the evidence which the courts consider on a motion for injunctive relief, the Tenth Circuit has stated:

> We [the Tenth Circuit] must be mindful…, as the Supreme Court has cautioned, that "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *University of Texas v. Camenisch*, 451 U.S. 390, 395, 101 S. Ct. 1830, 68 L. Ed. 2d 175 (1981). A hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules. The Federal Rules of Evidence do not apply to preliminary injunction hearings.

*Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003).

### III. ANALYSIS

#### A. Requirements of Rule 65(b)(1)(B) and Local Rule 65.1

As stated, Vivos' Motion is supported by affidavits and other materials. In addition, Vivos submitted a proposed order, and certified that service, or attempted service, of the Complaint and Motion has been made on StraightSmile. Thus, Vivos has shown the requirements of Rule 65(b)(1)(B) and Local Rule 65.1 have been met. The issue then is whether Vivos has shown the four requirements for temporary injunctive relief have been met.

---

[2] Under the "modified test," when the other three requirements for preliminary injunctive relief tip strongly in the movant's favor, the test is modified so that the movant may meet the likelihood of success on the merits requirement "'by showing that questions going to the merits are so serious, substantial, difficult, and doubtful as to make the issue ripe for litigation and deserving of more deliberate investigation.'" *Diné Citizens*, 839 F.3d at 1282 (quoting *Davis*, 302 F.3d at 1111).

### B. Injunctive Relief

#### 1. *Substantial Likelihood of Success on the Merits*

Vivos asserts it will likely succeed on the merits of its claim for libel per se. Thus, the Court examines the elements of that claim.

"To determine whether a statement is defamatory, courts ask two questions. First, 'is ... the statement . . . "sufficiently factual to be susceptible of being proved true or false?"' Second, would 'reasonable people ... conclude that the assertion is one of fact?'" *BKP, Inc. v. Killmer, Lane & Newman*, LLP, 506 P.3d 84, 98 (Colo. App. 2021) (quoting *Keohane v. Stewart*, 882 P.2d 1293, 1299 (Colo. 1994)). When deciding whether the assertion is one of fact, the Court considers "how the assertion is phrased"; "the context of the entire statement"; and "the circumstances surrounding the assertion, including the medium through which the information is disseminated and the audience to whom the statement is directed." *Keohane*, 882 P.2d at 1299. Under the First Amendment, "an expression of belief or opinion that does not imply the existence of a false and defamatory fact is constitutionally privileged." *Zueger v. Goss*, 343 P.3d 1028, 1034 (Colo. App. 2014). If a defamatory statement is published to a third party it is considered defamation by libel. *Denver Pub. Co. v. Bueno*, 54 P.3d 893, 898 (Colo. 2002).

"A publication of libel can be either defamatory per se or defamatory per quod, depending upon the certainty of the defamatory meaning of the publication. If a libelous communication is defamatory per se, damage is presumed, and a plaintiff need not plead special damages." *Gordon v. Boyles*, 99 P.3d 75, 79 (Colo. App. 2004). "Statements are libelous per se if (1) the defamatory meaning is apparent from the face of the publication without the aid of extrinsic proof; and (2) the statement is specifically directed at a particular person." *Han Ye Lee v. Colorado Times, Inc.*, 222 P.3d 957, 961 (Colo. App. 2009). "The traditional categories of

slander per se are imputation of (1) a criminal offense; (2) a loathsome disease; (3) a matter incompatible with the individual's business, trade, profession, or office; or (4) serious sexual misconduct." *Gordon*, 99 P.3d at 79.

In this case, Vivos argues that StraightSmile's social media posts constitute libel per se because (1) they clearly inform Vivos' target audience that such individuals risk losing their licenses to practice dentistry; (2) they target Vivos by name; and (3) they are inherently injurious of Vivos' reputation. (ECF No. 2, pp. 5-6.)

The Court concludes that Vivos has shown a likelihood of success on the merits in this case. The Court agrees that the statements are defamatory on their face, informing Vivos' customers that they risk losing their licensure if they provide patients with treatment using Vivos' products. That is clearly a suggestion that is incompatible with Vivos' business and trade. The statements are also clearly targeted at Vivos, as it is mentioned by name.

### 2. *Irreparable Harm*

A plaintiff seeking injunctive relief "'must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages.'" *New Mexico Dep't of Game & Fish v. United States Dep't of the Interior*, 854 F.3d 1236, 1250 (10th Cir. 2017) (quoting *Fish v. Kobach*, 840 F.3d 710, 751–52 (10th Cir. 2016)). "[S]imple economic loss usually does not, in and of itself, constitute irreparable harm; such losses are compensable by monetary damages." *Heideman*, 348 F.3d at 1189. Moreover, the "harm must be both certain and great, and not merely serious or substantial." *New Mexico Dep't of Game & Fish*, 854 F.3d at 1250 (quotations marks and citation omitted). "Price erosion, loss of goodwill, damage to reputation, and loss of business opportunities are all valid grounds for finding irreparable harm." *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 930 (Fed. Cir. 2012).

Here, the Court finds that the risk of irreparable harm has been sufficiently shown. In this case, StraightSmile has published its statements to Vivos' customer base and suggested that if they were to use Vivos' products, they would risk losing their professional livelihoods. Thus, the statements strike right at the heart of Vivos' reputation and business opportunities. Moreover, the calculation of damages for business lost on account of these statements would be extremely difficult, if not impossible.

### 3. Balance of Harms and Public Interest

The Court finds that the balance of hardships weighs in Vivos' favor. The temporary injunctive relief provided requires StraightSmile to simply remove its social media posts that reference Vivos in this context. Thus, StraightSmile risks no damage to its business or any other injury as a result of being required to do so. In fact, in at least one communication with Vivos' counsel, StraightSmile already indicated a willingness to remove the specified posts. (ECF No. 2-3, p.2.) For these same reasons, the Court finds that temporary injunctive relief will not be contrary to the public interest.

### C. Relief Requested

Vivos submitted a Proposed Order in which it asks this Court to order StraightSmile to (1) delete any social media post referencing Vivos or its appliances and (2) refrain from posting any additional defamatory statements regarding Vivos or its appliances. (ECF No. 2-5.) The Court concludes that the language in the Proposed Order is overly broad. The Court has therefore crafted a more narrowly tailored Order to prevent the possible irreparable harm to Vivos without trampling on StraightSmile's First Amendment rights.

## IV.   CONCLUSION

Based on the foregoing, it is

**ORDERED** that Vivos Therapeutics Inc.'s Motion for Temporary Restraining Order (ECF No. 2) is **GRANTED** and Defendants StraightSmile Solutions LLC and Kathryn Amanda Wilson are temporarily restrained as follows:

If they have not already done so, Defendants StraightSmile Solutions LLC and Kathryn Amanda Wilson shall remove any postings that they have previously made with respect to Vivos Therapeutics, Inc. stating, suggesting, or implying that the FDA and/or ADA has determined that Vivos' products are the subject of a safety concern evaluation.  More specifically, Defendants are **ORDERED** to remove postings in the form of, or substantially similar to, those included in Attachment A to this Order.

**FURTHER ORDERED** that this Order be and is hereby conditioned upon Plaintiff Vivos Therapeutics Inc.'s filing with the Clerk of this Court an undertaking in the form of a surety bond in the amount of **$5,000.00 no later than 4:30 p.m. on Tuesday, April 25, 2023,** to secure the payment of such costs and damages as may be sustained by any party who is found to be wrongfully restrained hereby.  **This Order shall only become effective upon the posting of such bond**; and it is

**FURTHER ORDERED** that Plaintiff Vivos Therapeutics, Inc. immediately serve a copy of this Order on Defendants StraightSmile Solutions, LLC and Kathryn Amenda Wilson by overnight mail to their last known addresses and by hand delivery simultaneously, and shall file a certificate of service with the court within three (3) business days of such service; and it is

**FURTHER ORDERED** that pursuant to Fed. R. Civ. P. 65(b)(4), any Defendant restrained may apply to this Court to dissolve or modify this Order on two (2) days' notice, or

such shorter notice as this Court may allow, but no such application shall serve to suspend this Order once effective or stay its terms unless otherwise ordered by this Court; and it is

**FURTHER ORDERED** that this Temporary Restraining Order shall remain in effect for fourteen (14) days from its effective date, unless it is otherwise modified by the Court; and it is

**FURTHER ORDERED** that this case is set for a preliminary injunction hearing on **Monday, May 8, 2023 at 2:00 p.m.** in Courtroom A601 at the Alfred A. Arraj Courthouse, 901 19th Street, Denver, Colorado.

DATED this 24th day of April, 2023 at 4:30 p.m.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge

**APPENDIX A**













4

